**IHLE v. JOHN L. WASEY, Inc., et al.**

No. 6695.

United States District Court
W. D. Louisiana,
Lake Charles Division.

Jan. 19, 1949.

A. L. Plauche, of Lake Charles, La., for trustee.

Selby & Hickman, of Lake Charles, La., for bankrupts.

Reed & Holloman, of Lake Charles, La., for defendant A. A. Nelson.

DAWKINS, Chief Judge.

Summary proceedings, by rule, were instituted in the name of the Trustee in Bankruptcy of R. D. Stewart & Sons, hereafter called Stewart, against John L. Wasey, Inc., Travelers' Insurance Company, and A. A. Nelson, to set aside certain transactions by the bankrupt, with said defendants in rule as voidable preferences. A severance as to the other defendants in rule was granted and that against Nelson alone was tried, resulting in a judgment in favor of the trustee. Nelson seeks review.

It was stipulated that Stewart was insolvent at the time of the chattel mortgage to Nelson and the only issue, it is said, is as to whether the latter possessed information sufficient to lead a reasonable man to believe insolvency existed. The facts found by the Referee, other than the conclusions drawn therefrom, were as follows:

"In September, 1946, R. D. Stewart & Sons owed A. A. Nelson $16,988.61. Prior to October 8, 1946, there appeared in the Lake Charles American Press an advertisement stating that R. D. Stewart & Sons were selling out their equipment and were moving out of the state. (They were engaged in the trucking business). Mr. Nelson on October 8, 1946 filed a suit in the District Court of Calcasieu Parish, La., ob-

tained a writ of attachment and the Sheriff seized practically all the property of bankrupts in that parish. On October 15, 1946, the bankrupts and A. A. Nelson compromised their differences and the bankrupts agreed to pay $8,000.00 at the rate of $500.00 per month, secured by a chattel mortgage on a large portion of bankrupts' assets. This settlement disposed of the $16,988.61 alleged by Nelson to be due him. At the same time one RD-7 Caterpillar tractor was sold, transferred and delivered to A. A. Nelson by the bankrupts in satisfaction of the preexisting debt.

"R. D. Stewart & Sons filed a voluntary bankruptcy proceeding on December 11, 1946, and on January 7, 1947, were adjudicated bankrupts. Albert J. Ihle was elected trustee on January 21, 1947."

Otherwise the Referee stated that he "considered it unnecessary to extensively discuss the testimony * * *".

■ We begin with the legal requirement that the burden was upon the Trustee, plaintiff in rule, to prove by a fair preponderance of the evidence that Nelson had reasonable grounds to believe Stewart was insolvent and that the chattel mortgage would give a preference. While the present law makes the findings of the Referee on the facts more or less conclusive, the question of whether there is a preponderance, involves issues both of fact and of law. The record shows, without dispute, that Stewart and Nelson were engaged in the same type of business and that they became acquainted in 1942. They each owned trucks, tractors and related equipment, from the renting of which they derived considerable income in their respective businesses. The evidence offered in this case is meager, incomplete and confused. It seems apparent that because it was stipulated Stewart was actually insolvent at the time of the compromise settlement of the indebtedness to Nelson and the executing of the chattel mortgage and note assailed herein, this had much to do with the failure to present a complete picture of their dealings, relationships and condition of the bankrupt's business from the time Nelson began lending Stewart large sums of money, according to the best that can be gleaned

from the record, in the early part of 1945. In fact, there is nothing in the record in the trial of the present case to show the total indebtedness of the bankrupt or just when and how it accumulated. If the allegations of the petition of attachment in the State Court, which was filed October 11, 1946, about a month after the compromise settlement, are to be considered, Nelson was lending Stewart large additional sums of money in the early part of that year, notwithstanding the latter had given postdated checks, likewise for big figures, which were not paid according to agreement, but were extended from time to time. Human nature is such that it is hard to believe that if Nelson knew the real condition of Stewart he would have done this, even when tempted by exorbitant interest.

■ There is little doubt that, in making the two loans of $4500 and $3000, with which to meet or replace checks given by Stewart for machinery, Nelson was paid compensation or interest for said loans of 50%, but it was agreed that the latter should have security therefor by retaining some sort of a lien upon the machines so purchased by Stewart from others, including the one sought to be recovered in this case. Instead of executing chattel mortgages in the form prescribed by law, rental-sales agreements were entered into, stipulating the title should remain in Nelson for property which he had not sold but for which he was advancing money, until the sums so loaned could be repaid at so much per month. Of course, under the jurisprudence of Louisiana, there is no such thing as a sale in which the seller retains title, as is commonly done in common law states. It must be assumed also, I take it, that Nelson would not have loaned these large sums of money, if he had not believed he was being protected by some sort of lien upon the machines. Had he taken chattel mortgages instead of the type of contracts used, he would have been protected, insofar at least as the money he actually advanced was concerned, although the 50% charged could probably have been successfully resisted. However, in the compromise settlement, which was entered into as the result of the attachment suit, the total amount of indebtedness was reduced about

one-half, which probably included the excessive interest.

 Courts of bankruptcy are courts of equity and it has been held that where parties intend and attempt to create a conventional lien, and through some technical error they are not successful as a matter of legal form, equity will treat as done that which should have been done and carry out the intentions of the parties to the contract by substituting equitable relief for that which would otherwise prevail under statutory contracts. See Vol. 30 C.J.S., Equity, §§ 47, 106, 153, pages 379 et seq., 507, 592; Union Trust Co. v. Townshend (In re Smith), 4 Cir., 101 F.2d 903, particularly page 908 et seq. I do not say that it can be done in this instance, but for the reasons stated, it is felt that this case should go back to the Referee, with the privilege to Nelson, if so advised, to reform his pleadings, so as to assert such rights as he may have under the principles of equity; and, in event of failure in that regard, to more completely develop all the facts in regard to the amount of indebtedness due by the bankrupt, Nelson's familiarity therewith preceding the payment to Stewart of $27,000 for machinery, which went to the Bank, the amount and value of the collateral, etc., which was returned to the bankrupt.

The evidence in this record as to the condition of Stewart's business at the time of this settlement, the character of all Nelson's claims, and the forms in which they were represented before the attachment suit was filed, with dates when created, etc., the extent of the bankrupt's gambling, number, dates and amounts of the checks given therefor, etc., could probably be developed, all to the end of showing the extent of Nelson's familiarity with Stewart's affairs or the lack of it in, order that the court may judge it in the light of what a reasonable man would have believed, with such information as Nelson had when the chattel mortgage, assailed here, was given. It would seem that the advertisement by Stewart for the sale of such a large quantity of machinery in which he stated it was producing some $25,000 in revenue during the preceding ninety days, with the monthly rentals set forth therein, plus the statement he was leaving the state, were, of themselves, sufficient at law to warrant the attachment suit. This suit was compromised for about 50¢ on the dollar of what Nelson was claiming, and if anything was said about his financial condition in that settlement or by their attorneys, which would throw any light on Stewart's financial condition, there seems no reason why, even though it was a compromise, the same could not be developed as bearing upon the good faith of Nelson with respect to whether he could be charged with knowledge, at that time, of the insolvency. I do not believe that the record is now in shape to permit either the Referee or this Court to intelligently pass upon the most important issue in the case, to-wit, whether there were grounds for a reasonable conclusion of insolvency rather than suspicion on the part of Nelson.

The ruling of the Referee is set aside and the matter will be sent back for further hearing in accordance with the views here expressed.